UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY as Subrogee of, NOVARTIS CORPORATION<br>    Plaintiff,<br><br>v.<br><br>SKANSKA USA BUILDING, INC. and J.C. CANNISTRARO, LLC,<br><br>    Defendants. | No. 18-cv-11700-DLC |

**ORDER ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

CABELL, U.S.M.J.

## I. INTRODUCTION

Plaintiff Factory Mutual Insurance Company ("Factory Mutual") issued an insurance policy to Novartis Corporation ("Novartis") to provide coverage during a construction project. When loss did occur, Factory Mutual paid on Novartis' claim and then brought this subrogation action against the entities it deemed responsible for the loss, project contractor Skanska USA Building, Inc. ("Skanska"), and a project subcontractor, J.C. Cannistraro, LLC ("JCC"). The defendants move for summary judgment on the ground that the anti-subrogation doctrine, which bars an insurer from bringing a subrogation action against its own insured, bars the plaintiff's suit against them because they too are insureds under Factory Mutual's policy. (D. 37). For

the reasons explained below, the motion for summary judgment is denied.

**II.   RELEVANT FACTS**

Factory Mutual issued an insurance policy (the "Policy") to Novartis to provide coverage during Novartis' construction of a biomedical research lab in Cambridge, Massachusetts.  (D.38, Defendant's Statement of Material Facts (SMF) ¶ 1, 2, Ex. 1).

The Policy has a "Named Insured" provision which specifically defines the "Insured" to be "Novartis," any Novartis "subsidiary," or any "partnership or joint venture" in which Novartis has management control or ownership.

Pertinent here, the Policy also has a "Property Damage" provision through which it "also insures the interest of contractors and subcontractors in insured property. . . to the extent of the Insured's legal liability for insured physical loss or damage to such property."

The Policy also has a "Loss Adjustment" provision which provides that "[a]dditional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with the Company. . ."

Against this backdrop, Novartis hired Skanska as the general contractor to perform work on the construction site and

Skanska in turn hired JCC as a subcontractor. (SMF ¶ 4, 5). During construction, a threaded cleanout plug at the project allegedly failed and released water from the City of Cambridge into the construction site, causing substantial damage. (D.40, Pl. Opp., 3). The parties do not dispute that the loss occurred during a period of insurance coverage, during construction, and at an insured location. (SMF ¶ 6, 7).

Novartis submitted a claim for loss and Factory Mutual paid on the claim. Factory Mutual contends that the defendants caused the loss and brought the present action against them as subrogee of Novartis. The complaint alleges negligence against both defendants and breach of contract against Skanska.

### III. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment as to any claim, or part of a claim. Fed. R. Civ. P. 56(A). The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Johnson v. Gordon*, 409 F.3d 12, 16–17 (1st Cir. 2005) (quoting *Garside v. Osco Drug*, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(A).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *Johnson*, 409 F.3d at 17.  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *Id*.

## IV. DISCUSSION

Under Massachusetts law,[1] an insurer that has paid a claim for a loss under an insurance contract has a right of subrogation, that is, a right to stand in the shoes of the insured and seek indemnification from third parties whose

---

[1] The court presumes that Massachusetts law applies where the complaint invokes the court's diversity jurisdiction and the parties have not argued otherwise.  See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

4

wrongdoing caused the loss.  *See e.g., Liberty Mut. Ins. Co. v. Nat'l Consol. Warehouses, Inc.*, 34 Mass. App. Ct. 293, 296 (1993).  However, the anti-subrogation doctrine provides that an insurer has no right of subrogation against its own insured, and thus may not seek indemnification against a third party if the third party also happens to qualify as an insured under the policy.  *See Peterson v. Silva*, 428 Mass. 751 (1999); *HDI-Gerling America Insurance Co. v. Navigators Insurance Co.*, 199 F. Supp. 3d 422 (D. Mass. 2016).

In arguing that the anti-subrogation doctrine bars the plaintiff's suit here, the defendants do not argue that the Policy actually names them as insureds.  Indeed, there is no dispute that the Policy's "Named Insured" provision explicitly designates the term "Insured" to include only Novartis, a Novartis subsidiary, or a Novartis owned or controlled partnership or joint venture.  The defendants also do not argue that they are insureds because they have been named on a "Certificate of Insurance" as provided for by the Policy's "Loss Adjustment" provision.  There is no dispute that they have not.

Rather, the defendants argue that they qualify as insureds because the Policy's "Property Damage" provision "also insures the interest of contractors and subcontractors in insured property during construction at an insured location. . . to the extent of the Insured's legal liability for insured physical

5

loss or damage to such property," "limited to the property for which they have been hired to perform work." The defendants contend that they satisfy these criteria because: they are a contractor or subcontractor; the Policy covered the construction project on which they were working; and the loss occurred during construction and at an insured location.

As such, and tracking the language of the provision, the defendants argue that they therefore are insureds "to the extent of the insured's legal liability for insured physical loss or damage." With respect to this last phrase, the defendants assume that the term "the insured's" refers specifically to them and that the phrase, in context, therefore means that the Policy also insures the defendants' interests (as contractors and subcontractors) to the extent of "*the defendants*'" legal liability for loss or damage. The defendants reason that because they face liability by virtue of the present suit, this provision is meant to insure them to the extent they may be held liable. The court does not find the defendants' argument persuasive.

To begin, it is not self-evident that the word "insured's" as used in the latter part of the provision at issue is meant to refer to the "contractors or subcontractors" mentioned at the outset of the sentence. To be sure, the structure of the sentence, which begins by speaking of insuring contractors and

6

subcontractors' interests and ends by noting the limits of such coverage, arguably contributes to the defendants' assumption. In the absence of more, it would not be patently unreasonable to read the sentence as purporting to insure the interests of contractors and subcontractors to the extent of their legal liability.

But there is more here.  Notably, the defendants fail to acknowledge that the provision at issue capitalizes the word "insured" and the sentence in actuality reads that the Policy insures the interests of contractors and subcontractors "to the extent of the *Insured's* legal liability."  To this court, this matters because the Policy unequivocally designates the capitalized term "Insured" to refer only to Novartis or a Novartis controlled entity.  With the addition of this simple but important fact, it is clear to this court that the provision is meant to convey that the Policy also insures the interests of sub/contractors to the extent of *Novartis'* legal liability, not *the defendants'* legal liability.  This clarification is legally significant because Factory Mutual seeks to recover from the defendants for their own negligence, not Novartis'.  The Property Damage provision therefore provides no recourse to the defendants to seek relief or coverage from Factory Mutual for loss attributable to their own conduct.

The court's interpretation of the phrase as providing coverage to the defendants only to the extent of Novartis' liability is further bolstered by the fact that the provision refers to "contractors and subcontractors" in the plural but by contrast refers only to the "Insured" in the singular.  If the interpretation urged by the defendants were correct, one would expect the sentence to be grammatically consistent and refer to the extent of the *Insureds'* legal liability.

Moreover, reading the word "Insured's" to refer to Novartis would be consistent with Massachusetts decisions construing "Named Insured" provisions as well as instances where a contract used a capitalized word throughout to define a key term.  *See, e.g., Cohne v. Navigators Specialty Ins. Co.,* 361 F. Supp. 3d 132, 146 (D. Mass. 2019) (rejecting argument that party could qualify as insured where not named in Named Insured provision); *Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E.,* 615 F.3d 45, 54 (1st Cir. 2010) (finding that defined terms indicated by initial capitals should be accorded the their special meaning); *In re Blinds to go Share Purchase Litigation*, 443 F.3d 1, 7 (1st Cir. 2006)) ("Where the parties to a contract take pains to define a key term specially, their dealings under the contract are governed by that definition.").

Further, Novartis and Skanska's own contractual dealings strongly suggest that Novartis and the defendants intended for

8

the defendants rather than Novartis to bear responsibility for obtaining insurance coverage for the defendants' work during the project.  In particular, the initial form agreement between Novartis and Skanska called for them to have an *Owner* Controlled Insurance Program (OCIP) but the provision was amended to instead call for a *Contractor* Controlled Insurance Program (CCIP), with approximately $140,000 to be provided to Skanska to fund the program.[2]  (D.40, Ex. B, at 2).  While not dispositive, the fact that the defendants were required to obtain their own insurance certainly does not aid their argument that the Policy was meant also to treat them as insureds.

Further still, Novartis and Skanska amended their contract to remove a provision which among other things had called for Novartis and Skanska to "waive all rights against each other and any of their Subcontractors, Sub subcontractors, agents and employees. . .," and put in its place language that waived the right of subrogation only in favor of Novartis.  ("All such policies shall include a waiver of subrogation rights against

---

[2] An OCIP or CCIP program of insurance is put into place by the owner or general contractor on a construction project.  Instead of each contractor or subcontractor providing its own insurance, the owner or general contractor provides insurance for the project and requires that bidders exclude the cost of such insurance from their bids.  A typical wrap-up, CCIP or OCIP program includes general and excess liability insurance, workers' compensation insurance, and builder's risk insurance.  57 Mass. Prac., Mass. Construction Law § 8:14, Typical policies—OCIP, CCIP or wrap-up coverage.

Owner and any additional insureds by the insurer."). (D.40, Ex. 1 at 85, 94). Consequently, Novartis did not waive any rights as against the defendants. By contrast, had that original sentence been present in the final contract between Novartis and Skanska, Factory Mutual likely would have been barred from bringing this suit. *See e.g., Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass. App. Ct. 254, 501 N.E.2d 524 (1986) (affirming summary judgment for defendants in subrogation suit by insurer of construction site owner against general contractor and subcontractor because of subrogation waiver clause).

Finally, Novartis and Skanska's contract contains a provision clarifying that "[a]ll insurance required of the [c]ontractor or any of its [s]ubcontractors...will have no recourse to any insurance program carried by the [owner]," further undermining the notion that the defendants were to enjoy coverage under Factory Mutual's policy. (D.40, Ex. 1 at 94).

In sum, neither the Policy nor the record as a whole supports the assertion that the Policy's "Property Damage" provision makes the defendants insureds in addition to Novartis. Accordingly, there is no basis to find the anti-subrogation doctrine applicable, and no basis therefore to bar the plaintiff's claims from going forward.

To be sure, the defendants note that at least one other court has contrarily found that a somewhat similarly worded

provision in a policy issued by Factory Mutual did make a subcontractor an insured for purposes of invoking the anti-subrogation doctrine. *See Factory Mutual Insurance Company v. Peri Formworks Systems, Inc.*, 223 F. Supp. 3d 1133, 1141 (D. Or. 2016). *Peri Formworks* is readily distinguishable on the facts, however. Among other things, the subcontractor there had been issued a Certificate of Insurance, which on its own was sufficient to make the subcontractor an insured under Factory Mutual's policy. Moreover, the subcontractor was enrolled in an *Owner* rather than *Contractor* Controlled Insurance Plan and the Property Damage provision explicitly "insure[d] the interest of contractors and subcontractors that are enrolled in the [owner] sponsored Owner Controlled Insurance Program (OCIP)...." *Peri Formworks,* 223 F. Supp. 3d at 1139. As noted above, the defendants have no such facts in their favor here.[3]

---

[3] Although the instructive value of *Peri Formworks* is tempered by the noted distinctions, it bears remarking that the court there, like this court, labored to make meaningful sense of the Property Damage provision's phraseology deigning to insure a sub/contractor's interests to the extent of the insured's legal liability for loss. What exactly does that phrase mean in practical terms? The court in Oregon reasoned that "[t]his text would be rendered meaningless under [the] interpretation that the property is only insured to the extent of [the owner's] legal liability because that is not insuring the contractors' and subcontractors' interest; it is insuring only [the owner's] interest." *Peri Formworks,* 223 F. Supp. 3d at 1141. In the present case, Factory Mutual posited at least one plausible response at the hearing on the defendants' motion, offering that the interest of contractors and subcontractors in insured property during construction at an insured location could refer to the interest the builders may have in their own tools and equipment used at the construction site. Under this scenario, then, Factory Mutual might be bound to cover loss for such equipment if the loss was caused by the owner. It is not necessary for the court to pass on this offered interpretation where the defendants here argue more broadly that the Property Damage provision makes them insureds for their own negligence as well as for loss and damage to the property itself. It is left to Factory

11

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (D.37) is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: June 1, 2020

---

Mutual to consider whether this provision might benefit from greater clarity going forward.